

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Board of Water Engineers
Austin, Texas

Dear Mr. Sturrock:

Attention:  Mr. J. E. Sturrock

Opinion No. O-2625
Re: Priorities with respect
to the appropriation of
waters of the Colorado
River and its tributar-
ies, as the Lower Colo-
rado Authority and the
Upper Colorado Authority
are concerned.

This will acknowledge receipt of your letter of
August 12, 1940, requesting a legal opinion from this De-
partment which letter so far as is pertinent is as follows:

"1.  Are the appropriations granted to
the Lower Colorado River Authority and others
of waters of the Colorado River for use for
the generation of power subordinate to rights
to such waters heretofore or hereafter ac-
quired for irrigation and municipal use.

"2.  Are the rights of the Lower Colora-
do River Authority to impound, store, sell or
otherwise dispose of water in its reservoirs
for all uses except hydroelectric power use,
prior to like uses of the Upper Colorado River
Authority, assuming the latter proceeds with
its development for irrigation and domestic
use according to State water laws.

"In order that we may furnish the Bureau
of Reclamation with an opinion of the Legal
Department of this State, we respectfully re-
quest your opinion on the above questions.

Board of Water Engineers, Page 2

"For your information, you are advised that the Lower Colorado River Authority has acquired water rights under certain filings made under Chapter Two, Title Sixty of the Revised Civil Statutes of 1895, including filing made by John N. Simpson covering filings of Edgar L. Flippen, the Colorado River Syndicate, the Colorado River Power Company, A. R. Johnson and C. H. Alenander. A certified copy of the record of appropriation made by Simpson was filed with the Board of Water Engineers on June 30, 1914, and included irrigation, mining, milling, manufacturing, power, water works and stock raising.

"You are further advised that the Lower Colorado River Authority has acquired a series permits, through successive transfers, to impound, divert, appropriate and use not to exceed 1,391,530 acre-feet per annum of waters of the Colorado River and tributaries for the purpose of power development. This series of permits are dated May 15, 1926, are for power purposes only, and overlap the Certified Filings made by John N. Simpson et al, mentioned above.

"On May 25, 1938, the Board of Water Engineers granted the Lower Colorado River Authority Permits Nos. 1259, 1259-A and 1260. The applications for these permits are dated March 7th, 1938.

"Permit No. 1259 permits the Authority to impound, divert, appropriate and use not to exceed 1,391,530 acre-feet of the ordinary and storm and flood flow of the Colorado River and tributaries, for domestic and municipal uses, water to be used in processes designed to convert materials of a lower order of value into forms having greater usability and commercial value, irrigation, mining and recovery of minerals, and hydroelectric power. This permit includes 1,225,700 acre-feet per annum for power purposes, heretofore granted under permit No. 954 to the Syndicate Power Company on May 15, 1926. The total amount appropriated under both permits not to exceed 1,391,530 acre-feet per annum. This

permit also authorizes the construction of the Buchanan Dam.

"Permit No. 1259-A authorizes the Authority to construct the Inks Dam and impound, divert, appropriate and use not to exceed 1,391,530 acre-feet per annum of the ordinary and storm and flood flow of the Colorado River and tributaries for the generation of hydroelectric power. This permit includes the 1,225,700 acre-feet of water per annum for power purposes heretofore granted under permit No. 954 to The Syndicate Power Company on May 15, 1926. The total amount appropriated under both permits not to exceed 1,391,530 acre-feet per annum.

"Permit No. 1260 authorizes the construction of the Marshall Ford Dam, and permits the Authority to impound, divert, appropriate and use not to exceed 1,500,000 acre-feet per annum of the ordinary and storm and flood flow of the Colorado River and tributaries for domestic and municipal uses, water to be used in processes designed to convert materials of a lower order of value into forms having greater usability and commercial value, irrigation, mining and recovery of minerals, and hydroelectric power. This permit includes 1,391,530 acre-feet of water per annum for power purposes, heretofore granted under permits Nos. 951 and 952 to The Syndicate Power Company on May 15, 1926. The total amount appropriated under both permits not to exceed 1,500,000 acre-feet per annum.

"You are also advised that this Board has never granted the Upper Colorado River Authority permit to appropriate waters of Colorado River for any purpose, and further, the said Authority has never filed an application with the Board for a permit. And we have no knowledge of the Authority having acquired any permits heretofore granted to others."

House Bill No. 77, Chapter 126 of the Forty-Fourth Legislature (1935), General Laws, Regular Session, Page 336 created the Upper Colorado River Authority. The general and the enumerated powers of the Upper Colorado River Authority are very similar to those granted to the Lower Colorado River Authority by the terms of Senate Bill No. 2, Chapter 7 of the fourth called session, Forty-third Legislature (1934), General

and Special Laws of Texas, Page 19.  The act creating the Upper Authority contains the following:

"Provided further, that in creating and conferring the benefits of this Act on said District, it is declared as an essential part thereof that irrespective of any existing right or rights or permits issued by the Board of Water Engineers of the State of Texas to use the water of the Colorado River and its tributaries for the generation of hydro-electric power and which rights or permits may be acquired by the District; the impounding and use of the flood waters of the Colorado River and/or its tributaries for the generation of hydro-electric power by the District and/or any one who may succeed to the rights and privileges conferred upon it by this Act, shall be subject to the rights of any other person, municipal corporation or body politic heretofore impounding or now putting to beneficial use any such waters for the purposes, set forth in subdivisions (1), (2) and (3) of Article 7471 of the Revised Civil Statutes of the State of Texas, as amended by Chapter 128 of the Acts of the Forty-second Legislature of the State of Texas, when such other person, municipal corporation or body politic has heretofore received a permit for such use or uses from the Board of Water Engineers of the State of Texas, or who by law has heretofore been permitted to impound water for the aforesaid purposes, and nothing in this Act shall ever be construed so as to subject to condemnation by said District or any successors or by anyone who may succeed to the rights and privileges conferred upon it by this Act any waters heretofore impounded or to be impounded within or without the District under any law authorizing water to be impounded or under any permits heretofore granted or hereafter granted to a municipal corporation or body politic or any waters heretofore impounded or permitted to be impounded or used without the District under permits heretofore or hereafter granted to any person.

"Nothing in this Act shall be construed as depriving any person or municipality of the right to impound the waters of the Colorado River and/or its tributaries for domestic and/or municipal purposes, nor of repealing any law granting such rights to persons and municipalities.

"Sec. 2-a. It is now declared to be the public policy of this State that any and all rights of the District hereby created to impound and/or use and/or sell the waters of the Colorado River a d its tributaries for the generation of hydro-electric power shall be subordinate and inferior to the rights of cities and towns situated within the watershed of the Colorado River and its tributaries to build dams and impound flood waters for municipal purposes; and likewise the rights of the said District hereby created, to impound and/or use and/or sell said waters for the generation of hydro-electric power, shall be subordinate and inferior to the rights of any citizen of Texas, or bodies politic, to build dams and impound the flood waters within the watershed of the Colorado River and its tributaries for domestic purposes and for the purposes of irrigation, and the title to any and all rights, properties, licenses, franchises, and/or permits acquired, or to be acquired, by the Upper Colorado River Authority, shall be and become subject to the limitations imposed by this Section."

Senate Bill No. 2, passed at the 4th Called Session, 43rd Legislature, (1934) creating the Lower Colorado River Authority contains substantially if not identically the same language as that immediately above quoted from H. B. No. 77, 44th Legislature, creating the Upper Colorado River Authority.

Article 7471 of the Revised Civil Statutes, a part of the title "Waters" declares the following order of priorities with respect to the uses of public waters, to-wit:

1. Domestic and municipal uses, including water for sustaining human life and the life of domestic animals.

2. Water to be used in processes designed to convert materials of a lower order value into forms having greater usable and commercial value and to include water necessary for the development of electric power by means other than Hydro-electric.

3. Irrigation.

4. Mining and recover of minerals.

5. Hydro-electric power.

6. Navigation.

7. Recreation and pleasure.

The use embraced in Subdivision 1 is by common law a natural use superior to all other uses. (Clements vs. Watkins Land Company, 82 S. W. 665, reversed and remanded upon another point, 86 S. W. 733). Whatever the common law rule, however, may be, the statute itself has fixed the priorities in the order above named. Furthermore, the general statute and the Act creating the respective authorities have declared the priorities.

No question of vested rights in connection with the matters being discussed is involved under your statement of facts since both Authorities are governmental agencies and all proprietary rights of either or both therefore are those of the state for the use and benefit of the public and the state through the Legislature is free at all times to change its public policy and to change or repeal existing laws, so long as private vested rights are not disturbed thereby.

Our construction of these Acts, and a consideration of the principles announced, lead us to the conclusion that your first question should be answered in the affirmative, and your second one in the negative.

We have not considered--we do not find it necessary to decide--whether or not under the respective Acts creating the Lower Colorado River Authority and the Upper Colorado River Authority as state agencies it is necessary for such agencies to procure permits from the State Board of Water Control, in any event, or in other words, whether or not the respective Acts themselves constitute complete and direct authority for the agencies to do and perform the acts therein committed to their jurisdiction and power.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED DEC 2, 1940

OS:ew

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE